JAMES M. WALSH, JR., ET AL V. DALLAS RAILWAY & TERMINAL COMPANY.

No. 7940. Decided January 6, 1943.
Rehearing overruled February 17, 1943.
(167 S. W., 2d Series, 1018.)

386

*Dan P. Johnston, Ralph Gillen, Francis, Gallagher & Bean* and *Will R. Saunders,* all of Dallas, for petitioners.

It was error for the Court of Civil Appeals to hold that the findings of the jury that the negligent failure on the part of the bus driver; that his negligent driving in excess of twenty miles per hour; and his negligence in failing to apply the brakes on the bus were each an approximate cause of plaintiff's injury, and the finding by the jury that the discovery of plaintiff's peril was not in time to avoid the collision were so in conflict as to render the findings mutually destructive of each other and thus nullified the verdict as a basis for a judgment. Stehling v. Johnston, 32 S. W. (2d) 696; Lewis v. Martin, 120 S. W. (2d) 910; 5 Am. Jur., 666.

*Burford, Ryburn, Hincks & Charlton,* of Dallas, for respondent.

MR. JUSTICE ALEXANDER delivered the opinion of the Court.

J. M. Walsh, Jr., brought this suit against the Dallas Railway & Terminal Company for damages for personal injuries received by him as the result of a collision between the ambulance in which he was riding and a passenger bus operated by the Railway & Terminal Company, at a street intersection in the City of Dallas. The insurance carrier of Walsh's compensation insurance joined in the suit. Judgment was for the plaintiff and the insurance company in the sum of $8,276.00. The Court of Civil Appeals reversed the judgment and remanded the cause for a new trial. 156 S. W. (2d) 320.

The ambulance in which Walsh was riding belonged to Weaver Funeral Home, and was being driven by one Crane, the assistant manager. Walsh was an employee of the funeral home. At the time of the collision the ambulance had been sent on an alleged emergency call, and Walsh went along as a helper. The collision occurred at the intersection of Lemmon and Oak Grove Avenues. The bus was being driven south on Lemmon Avenue and the ambulance was traveling east on Oak Grove. There was a hedge at the northwest corner of the street intersection that obstructed the view of the driver of each of the vehicles. There was a stop sign which required vehicles on Oak Grove Avenue to stop at the intersection, but there was no such stop sign for vehicles traveling on Lemmon Avenue.

The jury found that the bus was being operated in excess of twenty miles per hour; that the driver of the bus negligently failed to keep a proper lookout and to apply his brakes at the street intersection; and that each of these acts was the proximate cause of the collision. As to Crane, the driver of the ambulance, the jury found that he negligently failed to keep a proper lookout; that he negligently drove the ambulance in excess of twenty miles per hour, and at a greater rate of speed than was reasonable under the circumstances; that he failed to yield the right of way to the bus; and that he failed to apply his brakes and come to a full stop before entering the street intersection. But the jury further found that neither of these acts of negligence was the sole proximate cause of the collision. The jury found that Walsh failed to warn Crane to reduce his speed, and that although he knew there was a stop sign at the street intersection, he failed to warn Crane to stop, but that he was not negligent in either of these respects. The

jury found in favor of the driver of the bus on the issue of discovered peril.

■ The Court of Civil Appeals held that the findings of the jury that the driver of the bus did not discover Walsh's perilous position in time to avoid the collision, by the exercise of ordinary care in the use of all the means at his command, was in conflict with the finding that he negligently failed to apply his brakes and reduce his speed at the street intersection. This was the point upon which the writ was granted. We are not in accord with the view expressed by the Court of Civil Appeals. The driver of the bus could have been guilty of negligence in approaching the street intersection at a high rate of speed and without applying his brakes and thereby creating a dangerous situation which proximately caused the collision, even though he did not actually discover the approach of the ambulance in time to avoid the collision. There was no conflict in the findings of the jury in this respect.

■ The Court was also of the opinion that if, as found by the jury, failure to apply the brakes was a proximate cause of the collision, then, as a matter of law, under the undisputed evidence, excess speed could not have a proximate cause of the collision—and, as a consequence, the two findings of the jury in this respect were in conflict. We are not in accord with this holding. There can be more than one proximate cause of a collision. 30 Tex. Jur., p. 694, Sec. 42; Blakesley v. Kircher (Com. App.), 41 S. W. (2d) 53, 55; Northern Texas Utilities Co. v. Floyd, 21 S. W. (2d) 6. The negligent act of the bus driver in approaching the street intersection at a high rate of speed, and his negligent failure to apply the brakes, each could have been a proximate cause of the collision.

■ However, the Court of Civil Appeals found that there was no evidence to support the jury's findings that either of the alleged acts of negligence of which the bus driver was convicted was a proximate cause of the collision. There was an assignment that the evidence was insufficient to support the verdict on these issues, and since the Court of Civil Appeals held that there was no evidence to support the verdict, we will assume that the court would have held that the evidence was insufficient. Cochran v. Wool Growers Central Storage Co., 140 Texas 184, 166 S. W. (2d) 904; Tweed v. Western Union Tel. Co., 107 Texas 247, 166 S. W. 696, 177 S. W. 957; Lillenthal v. Motor Car Indemnity Exchange (Com. App.), 239 S. W.

906; Rogers & Adams v. Lancaster (Com. App.), 248 S. W. 660; Maddox Motor Co. v. Ford Motor Co. (Com. App.), 23 S. W. (2d) 333. The right to find that the evidence was insufficient to support the verdict was a matter exclusively within the jurisdiction of the Court of Civil Appeals, and we have no right to review that holding. Since the case was remanded for a new trial because of the insufficiency of the evidence, it would serve no useful purpose for us to here discuss the law question as to whether or not there was *any evidence* to support any of the findings of the jury. The judgment of the Court of Civil Appeals remanding the cause for a new trial must be affirmed.

However, in view of another trial, there are other questions which we deem it necessary to discuss.

■ There was an ordinance in the City of Dallas which required all vehicles other than those excepted as "authorized emergency vehicles," to come to a full stop before entering a street intersection where there was a stop sign, such as was on Oak Grove Avenue. "Authorized emergency vehicles," when operating in an emergency, were permitted to proceed "past a red or stop sign, but only after slowing down as may be necessary for safe operation," and may "exceed prima facie speed limits (twenty miles per hour) so long as he does not endanger life or property." The ordinance further provided:

"(b) Upon the approach of an authorized emergency vehicle as above stated, the motorman of every streetcar shall immediately stop such car clear of any intersection and keep it in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer."

"Authorized emergency vehicles" were defined as follows:

"Sec. 1. AUTHORIZED EMERGENCY VEHICLES. Vehicles of the fire department, police vehicles, and such ambulances and emergency vehicles of municipal departments or public service corporations as are designated or authorized by the chief of police of the City of Dallas."

Upon the trial of the case the plaintiff took the position that the ambulance in which he was riding on the occasion in question was an "authorized emergency vehicle," and entitled to all the rights and privileges appertaining thereto, and in sup-

port thereof he introduced in evidence the ordinance above referred to, as well as other evidence. It will be noted that the ambulance in question does not come within the description of any of the vehicles definitely described in the ordinance—that is, it was not a vehicle of the fire department, nor a police vehicle. The plaintiff claims, however, that the Weaver Funeral Home was a public service corporation, and that its ambulance came within the description of an "authorized emergency vehicle" because before starting on the call in question, the funeral home, by telephone, sought and obtained permission from the police department of the City of Dallas to make the call as an emergency vehicle. It will be noted, however, that while the ordinance attempts to grant permission to the chief of police to designate what vehicles shall have the privilege of an "authorized emergency vehicle," and thus be exempted from many of the provisions of the ordinance regulating others, it sets up no standard by which the chief of police is to be guided in making such a designation. It is left to his unbridled discretion to say to whom the law shall be applicable, and to whom it shall not be applicable. For that reason Section 1 of said ordinance, in so far as it applies to public service corporations to be designated by the chief of police, is invalid. Grossman v. City of Galveston, 112 Texas 303, 247 S. W. 810, 26 A. L. R. 1210; Spann v. City of Dallas, 111 Texas 350, 235 S. W. 513, 19 A. L. R. 1387; Continental Oil Co. v. City of Wichita Falls (Com. App.), 42 S. W. (2d) 236; 30 Tex. Jur. 117, p. 18; 37 Am. Jur. p. 778, Sec. 160; annotations in 54 A. L. R. 1104.

■ There was evidence that Wash knew that Crane habitually drove the ambulance at an excessive and dangerous rate of speed, without obeying stop signs, while on emergency calls. The court refused defendant's request for the submission of an issue as to whether Walsh was guilty of contributory negligence in riding with Crane under such circumstance. This was error. The general rule is that evidence that a passenger accepts a ride in an automobile with the knowledge of the driver's incompetence, inexperience, or imprudence raises an issue for the jury as to his contributory negligence. Blashfield Encyclopedia of Automobile Law, Vol. 4, 243, Sec. 2542. See Also Sec. 2391. The above rule has been applied in most instances to cases where the passenger was a mere guest in the automobile, but we see no reason why it should not be applied in this case where Walsh was an employee. Ford Motor Co. v. Maddin, 124 Texas 131, 76 S. W. (2d) 474, par. 3. It is true

that, being inferior in rank to Crane, he would be less free to refuse Crane's request to make the trip, but this is a mere circumstances to be considered by the jury in determining whether a reasonably prudent person would have acted as he did under the circumstances.

The judgment of the Court of Civil Appeals, reversing the judgment of the trial court and remanding the cause for a new trial, is affirmed.

Opinion delivered January 6, 1943.

Rehearing overruled February 17, 1943.